IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAMESHA BREWER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:22-CV-1861-K |
| | § | |
| MBROH ENGINEERING, INC. and | § | |
| ANTHONY MBROH, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 21), Brief in Support (Doc. No. 22), and Appendix in Support (Doc. No. 26) (together, the "Motion"). Defendants filed a Response (Doc. No. 31) in opposition to the Motion and Appendix in Support (Doc. No. 32) (together, the "Response"). Plaintiff filed a Reply (Doc. No. 35) to the Response. The Court has carefully considered the Motion, the Response, the Reply, the applicable law, and the relevant portions of the record. The Court **GRANTS** Plaintiff summary judgment on the bona fide administrative exemption to the Fair Labor Standards Act (the "FLSA") protections. However, the Court **DENIES** Plaintiff summary judgment on the applicable FLSA limitations-period based on whether Defendants' alleged FLSA violations were willful. The Court also **DENIES** summary judgment on Plaintiff's claim for compensatory damages, liquidated

1

damages, and attorneys' fees because the issue of willfulness and the limitations period have not yet been established.

## I.     Factual and Procedural Background

Plaintiff Tamesha Brewer ("Plaintiff") was employed by Defendant Mbroh Engineering, Inc. ("MEI") from May 2016 until May 2022.  Doc. No. 1 at 4; Doc. No. 22 at 4.  Defendant Anthony Mbroh is the President and CEO of MEI.  Doc. No. 5 at 2, ¶ 8; *see* Doc. No. 32, Tab A at 1; Doc. No. 26 at App054.  In 2020, MEI promoted Plaintiff to Business Manager.  Doc. No. 26 at App002, App054.  In the Business Manager position,

> Brewer ran the office. She was in charge of everything related to running the office: answering the phone, processing mail, managing the company calendar, booking travel, ordering and monitoring supplies, tracking contracts, managing the reporting for the City of Houston audits, process/requesting insurance for projects, maintaining project budgets SOV, processed invoices, prepared customer quotes and orders, set up computers, printers and phones, software and new users in the company. Worked with the company's timesheet consultant to get the application more manageable and to be accessible from anywhere. Updated timesheets when a new project contract was signed. Provided daily office support for all employees by assisting with HR related items, any IT issues that may have occurred, ordered lunches, ordered business cards, certificate management, organized weekly breakfast, AP/AR, property management requests. Set up and maintained company vendor accounts (cell phones, food, software licenses, IT etc.).

*Id.* at App050-051 (Defendants' interrogatory response).  Plaintiff's work schedule was Monday through Friday from 7:30 a.m. until 4:30 p.m. with a one-hour lunch break. *Id.* at App003A; *see also id.* (Plaintiff testified that some Fridays she worked from 7:30

a.m. until 3:30 p.m. with no lunch break.). In her sworn Declaration, Plaintiff states that she routinely worked hours more than 40 hours per week. Doc. No. 26 at App055.

The reasons for and the number of overtime hours Plaintiff worked "varied each week depending on the needs of the office." Doc. No. 22 at 6; Doc. No. 26 at App021. This included brief periods of time, such as 30 minutes to pick up breakfast for the office, to lengthier periods of time spent working after hours (including weekends) to address such things as answering questions from Mr. Mbroh and clients, completing invoices, and "tak[ing] on last minute jobs as needed in supporting engineers in the office." *See* Doc. No. 26 at App008, App013, App020, App021, App022, App023, App024, App029, App055. Plaintiff maintains that Mr. Mbroh, as the owner of MEI, paid her for overtime "on occasion" but only on a straight time basis (not time-and-a-half) and only "when he was aware of a client deliverable that required work beyond normal business hours and/or when he could pass an engineers [sic] or field inspectors [sic] overtime directly to the client as an expense." *Id.* at App054. Although she did not record the hours she worked beyond her 40-hour workweek, Plaintiff estimates she regularly worked seven to ten hours of overtime each week between September 1, 2019, and March 3, 2022, for which she was not compensated. *Id.* at App012, App054-055; Doc. No. 1 at 4, ¶ 20.

On August 22, 2022, Plaintiff filed this suit against MEI and Mr. Mbroh (together, the "Defendants") asserting a single cause of action against them for willfully violating the FLSA by failing to pay Plaintiff, a covered employee, time-and-a-half as

3

required for the overtime hours she worked. Doc. No. 1 at 2-5. Plaintiff seeks unpaid back wages and liquidated damages along with attorneys' fees and costs.

Defendants filed their Answer to FLSA Complaint (Doc. No. 5) on September 14, 2022, in which they deny owing Plaintiff any overtime pay (or liquidated damages) and deny violating the FLSA by allegedly failing or refusing to pay Plaintiff for overtime that she worked. Doc. No. 5 at 4. Although they put forth multiple affirmative defenses, Defendants assert only one statutory exemption to the FLSA as an affirmative defense—"Defendants assert that [Plaintiff's] position was Business Manager, and that she was exempt from overtime under the administrative exemption." *Id.* at 5.

The parties timely filed their respective motions for summary judgment (Doc. Nos. 21 & 23) on different grounds. Defendants' Motion for Partial Summary Judgment (Doc. No. 23) is addressed in a separate memorandum opinion and order. The Court addresses Plaintiff's Motion for Summary Judgment herein.

## II.   Summary Judgment Standard

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" FED. R. CIV. P. 56(a)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' while a dispute about that fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Owens v. Circassia*

*Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the nonmovant will have the burden of proof at trial, the moving party must identify those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. This burden is satisfied when the movant shows that the nonmovant "has completely failed to prove 'an essential element of the nonmoving party's case'" *Owens*, 33 F.4th at 824 (cleaned up) (quoting *Celotex*, 477 U.S. at 323); *see Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) ("This includes when a nonmovant pleads an affirmative defense but fails to establish it."). However, if the movant will have the burden of proof on a claim, that party's "burden is even higher; [she] 'must establish beyond peradventure *all* of the essential elements of the claim.'" *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th 1986)).

Once the movant satisfies her burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotations omitted). The nonmovant must identify specific evidence in the record that establishes a genuine dispute of material fact exists. *ACE Am. Ins. Co. v. Freeport Welding & Fabrication Inc.*, 699 F.3d 832, 839 (5th Cir. 2012); *accord Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmovant fails to satisfy its burden if a rational trier of fact could not find in favor of the nonmovant on the summary judgment record. *Id.* (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). If the nonmovant fails to meet its burden, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

The court views the evidence and draws all reasonable inferences in the light most favorable to the nonmovant. *Guzman*, 18 F.4th at 160. But "unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (internal quotations and citation omitted); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The court will not "sift through the record in search of evidence" supporting the nonmovant's opposition to summary judgment. *Ragas*, 136 F.3d at 458 (internal quotations omitted); *see United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

## III.   Analysis

Plaintiff moves for summary judgment on Defendants' affirmative defense that a statutory bona fide exemption applies to Plaintiff thereby exempting her from the FLSA's overtime pay protection. Plaintiff argues specifically that Defendants cannot satisfy the required "salary" test or "primary duties" test, so this affirmative defense fails as a matter of law. *See, e.g.*, Doc. No. 22 at 4. Plaintiff also seeks summary judgment on the limitations-period applicable to her FLSA claim, which Plaintiff asserts

6

is three years (rather than two years) because Defendants allegedly acted willfully, and on her claims for $59,539.20 in compensatory and liquidated damages for the unpaid overtime, which Plaintiff estimates to be 7-10 hours per week, based on the three-year limitations-period, and for attorneys' fees.

Defendants respond that Plaintiff is exempt from overtime pay guaranteed under the FLSA because both her salaried pay and her primary duties satisfy the bona fide administrative exemption requirements. Doc. No. 31 at 3-7. Defendants wholly failed to respond to Plaintiff's request for summary judgment on compensatory and liquidated damages and on an extended three-year statute of limitations based on Defendants willful violations of the FLSA. In her Reply, Plaintiff re-urges her argument that the administrative exemption does not apply and, after pointing out that Defendants did not address her summary judgment arguments regarding their alleged willful violations of the FLSA or the number of overtime hours she claims to have worked, Plaintiff asks for $61,462.80 in damages based on her estimation of overtime hours worked and a three-year limitations period. (This amount, $61,462.80, was corrected from the amount requested in her Motion, $59,539.20, to reflect the ½ time she was not paid when Defendants paid her straight time for overtime.).

The Court notes that Plaintiff also moves for summary judgment on the "Computer Professional Exemption," 29 U.S.C. § 213(a)(17). However, Defendants did not plead this statutory exemption as an affirmative defense in their Answer. In fact, it was not until one month *after* the summary judgment motions were fully briefed

7

when, Defendants filed a motion for leave to amend their Answer to plead this statutory computer employee exemption to the FLSA. *See* Doc. No. 39 at 2, 9. Under the Court's Scheduling Order, the parties' deadline to move for leave to amend pleadings had expired almost 15 months prior to Defendants filing their motion. Doc. No. 47 at 5. Not surprisingly, Plaintiff was opposed to the requested relief, and she filed a response (Doc. No. 43). (Defendants did not file a reply in support of their motion to amend.) The Court entered an order denying Defendants leave to amend after finding, generally, that they did not meet their burden to demonstrate good cause under Rule 16(b)(4) and failed to show that, despite their diligence, the scheduling order deadline could not have been reasonably be met. *See, e.g.,* Doc. No. 47 at 11; *see also id.* at 5 (remarking that Defendants wholly failed to address the good cause standard under Rule 16(b)(4) or those factors, and this omission alone justified denial of the motion for leave to amend). Therefore, the Court does not address the Computer Professional Exemption on summary judgment as this affirmative defense has not been pled and is, therefore, not before the Court.

### A. Administrative Exemption to the FLSA

"The FLSA's overtime provision requires an employer to compensate any covered employee who works in excess of 40 hours in a workweek 'at a rate not less than one and one-half times the [employee's] regular rate.'" *Gilchrist v. Schlumberger Tech. Corp.*, 143 F.4th 620, 623 (5th Cir. 2025) (quoting 29 U.S.C. § 207(a)(1)). The protections guaranteed under the FLSA, including overtime pay, do not apply to an

employee who works "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) (the "EAP Exemption"). The EAP Exemption "gives the Secretary of the Department of Labor the power to 'define and delimit' the 'terms' of the exemption." *Mayfield v. Dep't of Lab.*, 117 F.4th 611, 614 (5th Cir. 2024) (cleaned up). The standard for assessing whether the EAP Exemption applies consists of: (1) the "salary basis" test, which asks whether the employee "receives a 'predetermined and fixed salary'" meaning that it "does not vary with the precise amount of time he works"; (2) the "salary level" test, which looks to whether "that preset salary exceeds a specified amount"; and (3) the "duties" test, which examines "the nature of the employee's job responsibilities." *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44-45 (2023) (citing 84 Fed. Reg. 51230 (2019)); *accord Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 718 (5th Cir. 2024). All three criteria must be met for the employee to fall within the EAP Exemption. *Helix*, 598 U.S. at 45.

To be "employed in a bona fide administrative capacity" specifically, the employee must be one (1) who is "[c]ompensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week;" (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a); *accord Fraser v. Patrick*

9

*O'Connor & Assocs., L.P.*, 954 F.3d 742, 745-46 (5th Cir. 2020). Because Plaintiff's FLSA overtime claim arises from her employment with Defendants between September 2019 and March 2022, the Court refers to the minimum weekly amount paid on a salary basis set forth in the regulation effective January 1, 2020, to June 30, 2024. *Cf. Texas v. U.S. Dep't of Labor*, 756 F. Supp. 3d 361, 399 (E.D. Tex. 2024) (district court in this Circuit vacated the "2024 Rule", which raised the minimum salary thresholds, and remanded to the DOL "for further consideration").

As for the first factor, an employer has one of two avenues under the regulations for establishing that an employee is paid on a salary basis: through 29 C.F.R. §§ 541.602(a) and 541.604(a) or, alternatively, through 29 C.F.R. § 541.602(b). *See Helix*, 598 U.S. at 46; *Gentry*, 102 F.4th at 718-19. Section 541.602(a) ("§ 602(a)"), which is the "main salary-basis provision," provides,

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly basis, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to certain exemptions, an exempt employee must receive the full salary for any week in which the employee performs any work *without regard to the number of days or hours worked*.

29 C.F.R. § 541.602(a) (emphasis added). As the Supreme Court explained, this rule "ensures that the employee will get at least part of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked. If, as the rule's second sentence drives home, an employee works any

part of a week, he must receive his 'full salary for that week'—or else he is not paid on a salary basis and cannot qualify" as exempt. *Helix*, 598 U.S. at 46. "[A]n employee receives compensation on a weekly—as opposed to a daily or hourly—basis, as § 602(a) demands, when he gets *paid a weekly rate*," not merely that he receives a weekly paycheck. *Id.* at 53 (emphasis added); *accord Gentry*, 102 F.4th at 720 ("Put simply, payment on a 'weekly basis' requires that an employee be paid a 'weekly rate.'") (quoting *Helix*, 598 U.S. at 53). "Section 604(a) supplements § 602(a) and explains: '[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis.'" *Gentry*, 102 F.4th at 719 (quoting 29 C.F.R. § 541.604(a)); *see id.* ("Section 602(a) provides a stable and predictable source of income[,] while § 604(a) allows performance incentives for work beyond the regular workweek.") (citing 69 Fed. Reg. 22122, 22183 (Apr. 23, 2004)).

The Supreme Court defined the phrase "'basis' of payment" as "the unit [of time] or method for calculating pay, *not the frequency of its distribution*." *Helix*, 598 U.S. at 53 (emphasis added).

Section 541.604(b) ("§ 604(b)"), the second path to being paid on a "salary basis", addresses payments "on an hourly, a daily or a shift basis" as opposed to § 602(a) that is limited to payments on "a weekly or less frequent basis." *Id.* at 55-56. Section 604(b) provides,

11

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek.

§ 541.604(b). Therefore, an hourly-rate employee is considered paid on a "salary basis" under § 604(b) "*only if*: (1) they also receive a 'minimum weekly required amount paid on a salary basis,' and (2) there is a reasonable relationship between the weekly guarantees salary and the employee's actual earnings." *Gentry*, 102 F.4th at 720 (emphasis added). Further, "[t]he regulations explain that a salary is 'roughly equivalent' to an employee's weekly earnings when the ratio of usual earnings to salary is 1.5 to 1." *Id.* (quoting § 604(b)).

In short, "the Supreme Court [in *Helix*] clarified that sections 602(a) and 604(b) provide alternative, independent methods for satisfying the salary basis test," with §602(a) applying to "employees paid on a weekly basis while § 604(b) applies to employees paid on a more frequent basis, such as by the hour or day." *Gentry*, 102 F.4th at 720. Accordingly, "the 'basis' of an employee's purported salary determines which regulatory test governs a particular compensation scheme." *Id.*

As Plaintiff's employer, Defendants bear the burden of proof to establish that an exemption applies. *See Fraser*, 954 F.3d at 745; *Dewan v. M-I, L.L.C.*, 858 F.3d 331,

12

334 (5th Cir. 2017), *abrogated on other grounds*, *Gilchrist v. Schlumberger Tech. Corp.*, 143 F.4th 620 (5th Cir. 2025). Defendants must adduce facts that establish the exemption "'plainly and unmistakably'" applies. *Alvarez v. NES Global LLC*, 709 F. Supp. 3d 294, 290 (S.D. Tex. 2023) (quoting *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 580 (5th Cir. 2013)). The Supreme Court has instructed that FLSA exemptions must be given "a fair reading" rather than a narrow construction. *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88 (2018) ("Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give them anything other than a fair (rather than "narrow") interpretation.'").

Neither party specifically addresses § 602(a) or § 604(b) in their respective summary judgment briefing on this issue. Even so, for the following reasons, the Court finds the summary judgment record establishes that Plaintiff was not paid on a salary basis under § 602(a) or § 604(b).

### 1. Salary Basis under § 602(a)

The Court turns first to whether Defendants prove, or fail to prove, that they paid Plaintiff on a salary basis under § 602(a). The Supreme Court emphasized that, pursuant to § 602(a),

> An employee . . . is paid on a salary basis if but only if he 'receives the full salary for any week in which he performs any work without regard to the number of days or hours worked." To break that up just a bit: Whenever an employee works at all in a week, he must get his "full salary for that week"—what § 602(a)'s prior sentence calls the "predetermined amount." That amount must be "without regard to the number of days or hours worked"—or as the prior

>sentence says, it is "not subject to reduction because" the employee worked less than a full week.

*Helix*, 598 U.S. at 51. To be sure, "[w]hen an employee's take-home pay is determined by the number of [hours] worked, payment is not 'without regard' to their [hourly] rate." *Gentry*, 102 F.4th at 721 n.42 (citing *Helix*, 598 U.S. at 54 n.5).

Plaintiff submits summary judgment evidence showing that she was not paid a predetermined amount each week. *See, e.g.*, Doc. No. 26 at App054. Citing to specific record evidence, Plaintiff establishes that she was not compensated for a full 40-hour work week if she fell short, even by as little as 30 minutes, and did not have vacation time or personal time off ("PTO") to cover the shortfall. *See, e.g., id.*, at App012, App054, App057-App062. "A worker paid by the day or hour—docked for time he takes off and uncompensated for time he is not needed—is usually understood as a daily or hourly wage earner, not a salaried employee [pursuant to § 602(a)]." *Helix*, 598 U.S. at 52. Plaintiff's evidence demonstrates that she was not paid a "predetermined amount" irrespective of the number of hours she worked that week, but instead that her "actual earnings could only be ascertained by determining the number of hours [she] worked that week." *See Helix*, 598 U.S. at 52; *Gentry*, 102 F.4th at 721. Plaintiff demonstrated there is no genuine issue of material fact on this issue. *See Owens*, 33 F.4th at 824.

As the parties with the burden of proof on the EAP Exemption, Defendants must come forward with specific facts showing a genuine dispute of material fact. *See Fraser*, 954 F.3d at 745. Defendants claim that Plaintiff was a salaried employee whose pay

14

"was not subject to deductions for anything other than missing work without having any paid time off available" and "did not vary unless she was paid overtime or ran out of paid time off and was unable to make up the time." Doc. No. 31 at 4. The only summary judgment evidence Defendants cite in support of their assertion that Plaintiff was paid on a salary basis is Mr. Mbroh's affidavit. *Id.* Defendants do not, however, cite the Court to specific page numbers or specific testimony that supports their position; instead, Defendants cite to the *entire* affidavit. *See id.* at 4 n. 2 (citation to "Appendix, Tab. A.") & n. 3 (citation to "Id."[sic]). Simply citing the Court to the document as a whole does not discharge Defendants' summary judgment burden to point to specific evidence showing a genuine dispute of material fact. It is not the responsibility of the Court to guess which portions of Mr. Mbroh's affidavit support Defendants' responsive argument. *See Ragas*, 136 F.3d at 458.

Even considering this affidavit in determining Plaintiff's Motion, the Court finds Defendants' evidence nevertheless fails to show that they paid Plaintiff on a salary basis under § 602(a). On the issue of Plaintiff's pay, Mr. Mbroh swears to the following in his affidavit: "Although [Plaintiff's] pay was expressed as an hourly calculation based on forty hours per week, it was a set amount which she received every two weeks. Any variations in pay, which happened infrequently, were either as a result of paid overtime or as a result of her failure to make up the hours in excess of her available paid time off." Doc. No. 32 at 7. This conclusory, unsubstantiated statement fails. First, Defendants do not submit any evidence whatsoever of the "set amount" Plaintiff was

15

supposedly paid "every two weeks." Further, Defendants fail to submit evidence (or even explanation) that the reductions in Plaintiff's pay were permissible under the regulations. *See also* 29 U.S.C. § 541.063(a) (effect of improper deductions from salary).

As the Supreme Court in *Helix* explained, "Whenever an employee works at all in a week, he must get his 'full salary for that week'—what § 602(a)'s prior sentence calls the 'predetermined amount.' That amount must be 'without regard to the number of days or hours worked'—or as the prior sentence says, it is 'not subject to reduction because' the employee worked less than the full week." *Helix*, 598 U.S. at 50-51 (cleaned up). On this summary judgment record, Defendants fail to raise a genuine issue of material fact that Plaintiff was paid on a salary basis under § 602(a), specifically that she was paid a full, preset salary for each 40-hour workweek that was not subject to reduction because of the number of hours or days she worked. *See id.* at 46.

### 2. Salary Basis under § 604(b)

Defendants could arguably show that Plaintiff was paid on a salary basis under § 604(b) to satisfy that requirement of the EAP Exemption. *See Gentry*, 102 F.4th at 723. An employer can pay an employee "on an hourly, daily, or shift rate without 'violating the salary basis requirement' or 'losing the exemption' *so long as two conditions are met*." *Helix*, 598 U.S. at 46-47 (emphasis added). To satisfy the first requirement, "the employer must 'also' guarantee the employee [the minimum salary level] '*regardless of the number of hours, days or shifts worked*.'" *Id.* at 47 (emphasis added). Second, there

16

must be a "reasonable relationship" between that promised amount and the amount the employee actually earns in a typical week; in other words, the promised amount "must be 'roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek.'" *Id.*  Only when *both* conditions are met does an employer's compensation scheme act like a salary—"a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Id.*

As the Court previously concluded, Plaintiff shows she was not paid a predetermined amount each week and, thus, has shown the absence of a genuine dispute of material fact. *See, e.g.*, Doc. No. 26 at App012, App054, App057-App062. Having the burden of proof at trial on the EAP Exemption, Defendants must show a genuine dispute of material fact on this issue to survive summary judgment on the EAP Exemption.  Defendants do not, however, cite specific summary judgment evidence raising a fact issue on whether Plaintiff was paid on a salary basis under § 604(b).  On this summary judgment record, there is no evidence that both of "§ 604(b)'s *strict* conditions" have been such that Plaintiff's "pay counts as a 'salary.'" *Helix*, 598 U.S. at 55 (emphasis added).  Defendants do not show that they guaranteed Plaintiff would receive "at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, *and* a reasonable relationship exists between the guaranteed amount and the amount actually earned." *Gentry*, 102 F.4th at 724 (5th 2024) (internal quotations omitted). Thus, Defendants fail to raise a

17

genuine dispute of material fact as to Plaintiff being paid on a salary basis under § 604(b).

For all these reasons, Defendants do not meet their summary judgment burden of raising a genuine dispute of material fact as to whether Plaintiff was paid on a salary basis under either § 602(a) or § 604(b). Defendants' failure to satisfy the salary basis test is dispositive, so the Court need not address the salary level test or the job duties test. *See Helix*, 598 U.S. at 44-45; *accord Gentry*, 102 F.4th at 718.

Because Defendants fail to make a sufficient showing on an essential element of the EAP Exemption, Plaintiff is entitled to summary judgment on this affirmative defense. *See Carnegie Techs.*, 39 F.4th at 293. The Motion is **granted** on Defendants' affirmative defense on this statutory exemption to the FLSA.

### B. FLSA Statute of Limitations and Damages

Plaintiff also moves for summary judgment on her claim that Defendants acted willfully in violating in the FLSA and her claim for compensatory and liquidated damages.

The FLSA provides for a two-year statute of limitations unless the violation is willful, which extends the limitations period to three years. 29 U.S.C. § 255(a); *see Harrison v. Tyler Techs., Inc.*, 638 F. Supp. 3d 694, 710 (E.D. Tex. 2022). The burden of demonstrating a willful violation falls on the employee. *See Mohammadi v. Nwabuisi*, 171 F. Supp. 3d 545, 550 (W.D. Tex. 2016), *aff'd*, 673 F. App'x 443 (5th Cir. 2017); *Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 807-08 (N.D. Tex.

2009)(Fitzwater, C.J.).  To demonstrate a willful violation, the employee "must show that the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA." *Valcho*, 658 F. Supp. 2d at 808 (quoting *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990)) (cleaned up); *accord Harrison*, 638 F. Supp. 3d at 710.  To be sure, this showing "requires more than is needed to prove negligence." *Mohammadi*, 171 F. Supp. 3d at 550; *see Valcho*, 658 F. Supp. 2d at 808 ("The Supreme Court has specifically stated that the word 'willful' refers to conduct that is voluntary, deliberate, and intentional, and not merely negligent.") (internal citation omitted).

  Plaintiff contends that Defendants' alleged violations of the FLSA were willful and, therefore, the Court can "look back" three years, instead of two years, in calculating Plaintiff's damages.  *See* Doc. No. 22 at 18.  Defendants wholly fail to address this summary judgment argument.  Nevertheless, on this summary judgment record, the Court finds that Plaintiff, who has the burden of proof on this issue at trial, did not "establish beyond peradventure *all* of the essential elements" of willfulness and, therefore, Plaintiff is not entitled to summary judgment on this issue.  *See Guzman*, 18 F.4th at 160 (internal quotations omitted); *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 611 (S.D. Tex. 2015) ("If the moving party [who has the burden of proof at trial] fails to meet its initial burden [of showing the absence of a genuine dispute of any material fact], the motion for summary judgment must be denied, regardless of the nonmovant's response.").  Because there is a genuine issue of material

19

fact as to the limitations period, summary judgment on Plaintiff's claim for damages is not appropriate. *See* 29 U.S.C. § 216(b). The Court likewise concludes that summary judgment on Plaintiff's claim for attorneys' fees is also not appropriate.

Therefore, the Motion is **denied** as to Plaintiff's claims for willful violations of the FLSA, damages (compensatory and liquidated), and for attorneys' fees.

## IV. Conclusion

For the foregoing reasons, the Court **grants in part and denies in part** Plaintiff's Motion for Summary Judgment.

**SO ORDERED.**

Signed December 2nd, 2025.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE